(164 App. Div. 245)

BURRELL v. CITY OF NEW YORK et al.   (No. 6140.)

(Supreme Court, Appellate Division, First Department.  November 6, 1914.)

1. MUNICIPAL CORPORATIONS (§ 402*)—STREETS—CHANGE OF GRADE—DAMAGE —VIEW BY BOARD OF ASSESSORS.

A board of assessors of damages sustained by a change of street grade is authorized to view the premises only to enable the assessors to understand and apply the evidence presented by the parties, and may not base the award on evidence disclosed by such view.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 969–981; Dec. Dig. § 402.*]

2. MUNICIPAL CORPORATIONS (§ 402*)—STREET GRADE—CHANGE—AWARD OF DAMAGES—BOARD OF ASSESSORS—SUCCESSORS.

Where a board of assessors made no assessment on a claim for damages to property by the change of a street grade, such duty devolved on their successors, on the theory that it was a continuing duty to be performed by the board.

[Ed. Note.—For other cases, see Municipal. Corporations, Cent. Dig. §§ 969–981; Dec. Dig. § 402.*]

3. MUNICIPAL CORPORATIONS (§ 402*)—STREETS—CHANGE OF GRADE—ABUTTING PROPERTY—DAMAGES—RIGHT TO HEARING.

Laws 1904, c. 460, authorizing an award of damages for injuries to property by the change in street grade incident to the construction of the East River bridge, confers on a property owner claiming such damages, the right to offer evidence before the board and to be heard by counsel,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

so that an award made without evidence so offered or an opportunity to offer it would be a nullity.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 969–981; Dec. Dig. § 402.*]

4. MUNICIPAL CORPORATIONS (§ 402*)—CHANGE OF STREET GRADE—AWARD—HEARING BEFORE ASSESSORS.

Where, on adjournment of a hearing on the question of damage to property by a change in street grade, the assessors indicated that complainant might introduce further evidence and that her counsel would be heard at a subsequent meeting, of which he would be notified, the board, made up of new members, had no jurisdiction thereafter to make an award on the evidence taken before their predecessors without giving complainant a further hearing.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 969–981; Dec. Dig. § 402.*]

5. MUNICIPAL CORPORATIONS (§ 402*)—CHANGE OF STREET GRADE—AWARD OF DAMAGES—CERTIORARI.

A board of assessors, making an award of damages to property by a change in street grade, as authorized by Laws 1904, c. 460, relating to the construction of the East River bridge, acted judicially, and their award was reviewable by certiorari.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 969–981; Dec. Dig. § 402.*]

6. MUNICIPAL CORPORATIONS (§ 404*)—CHANGE OF STREET GRADE—AWARD OF DAMAGES—VACATION—SUIT IN EQUITY.

Where an award of damages to property by a change in street grade was made by the board of assessors, complainant was not entitled to have the award set aside in equity, on the ground that exhibits were received in evidence, but that the record failed to show the fact, and hence they were not considered in making the award, since, if the record was erroneous in that regard, complainant should have proceeded to have it corrected.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 989–991, 993–999; Dec. Dig. § 404.*]

7. MUNICIPAL CORPORATIONS (§ 404*)—CHANGE OF STREET GRADE—AWARD OF DAMAGES—VACATION—SUIT IN EQUITY.

Where assessors of damages for change in street grade acted without jurisdiction in making an award on the record of their predecessors in office, without affording complainant an opportunity to be heard by counsel and to present further evidence, if she desired, she had an adequate remedy either by certiorari or mandamus, and for that reason was not entitled to sue in equity.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 989–991, 993–999; Dec. Dig. § 404.*]

8. MANDAMUS (§ 95*)—RIGHT TO WRIT.

The board of assessors adjourned a hearing of complainant's damages by a change of street grade and promised to notify her counsel when a further hearing would be accorded. This it did not do, and the members of the board went out of office and their successors made an award without granting such further hearing, on the record of their predecessors. No notice thereof was given, and neither complainant nor her attorney became aware of the award until seven months after it was made. *Held* that, while complainant was not required to watch the records to discover whether the board were proceeding in disregard of their promise to accord her a further hearing, she, having lost her right to review the proceeding by certiorari because of lapse of time without fault on her

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

part, was entitled to disregard the award, and compel the board by mandamus to fix a time and place for a hearing on her claim.

· [Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 201, 204; Dec. Dig. § 95.*]

Appeal from Special Term, New York County.

Suit by Fennella Burrell against the City of New York and others. From a judgment dismissing the complaint on the merits, pursuant to a decision on a trial of the issues at Special Term, complainant appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Truman H. Baldwin, of New York City, for appellant.

Charles J. Nehrbas, of New York City, for respondents.

LAUGHLIN, J. This is a suit in equity to cancel an award made by the board of assessors pursuant to the provisions of chapter 460 of the Laws of 1904. The award was for damages to the plaintiff's buildings, Nos. 198, 200, and 202 Delancey street, and 72, 74, and 76 Ridge street, borough of Manhattan, New York, caused by a change of the grade of Delancey street for the approach to the new East River bridge.

Section 1 of the statute provides that where the grade of any street or avenue has been changed to conform to the location and construction of the new East River bridge "the board of assessors of the city of New York is hereby authorized and empowered to estimate and allow the damage which each owner of land fronting on such streets or avenues has sustained or will sustain by reason of said change of grade, and to make a just and equitable award of the amount of such damage to the owner or owners of said lands fronting on said street or avenue and opposite thereto and affected by said change of grade." But it was provided that no award should be made unless buildings or improvements had been erected on the land prior to the change of grade, and that the damages "shall be limited to damages to such buildings or improvements."

Section 2 provides that the board of assessors, after fixing and allowing the damages, "shall file a certificate in writing of the amount of such allowance with the comptroller of the city of New York," and that the comptroller shall from time to time, when directed by the board of estimate and apportionment, issue and sell revenue bonds and pay the awards out of the proceeds thereof. The change of grade was made in December, 1902, and in December, 1904, plaintiff filed a claim for damages with the board of assessors. ·

The first session of the board, at which the plaintiff's claim was heard, was held on the 17th day of December, 1906. At that hearing evidence was taken, and the hearing was adjourned from time to time, and evidence offered by the claimant and by the city was thereafter taken. The last hearing at which evidence was taken was on the 1st day of July, 1909. At the close of the testimony of a witness examined on that day, a motion was made by the claimant to strike

out the testimony, and the record shows that the board reserved decision on the motion. There is no record of any further hearing by the board on this claim. No further proceedings were taken by the board of assessors then in office; and all of its members, consisting of three, went out of office on the 1st day of January, 1910, and were superseded by a new board. The first action by the new board of which plaintiff had notice consisted of a formal notice in writing, in the name of the secretary of the board and addressed to the attorney who represented plaintiff before the former board, to the effect that the board would hold a hearing on the 22d day of November, 1910, at 2 o'clock in the afternoon, to consider claims made pursuant to the provisions of said statute for damages alleged to have been caused by a change in the grade of streets approaching the new East River bridge; and notice was therein given that in the event of there being no appearance in response thereto "the board of assessors will dismiss such claims as filed by you, and now pending." According to the testimony of the attorney for the plaintiff, which is uncontroverted, that notice of hearing was countermanded by a message over the telephone to the effect that the hearing would not be held on that day and that the board of assessors would give further notice when they would hear the plaintiff's claim, and no such notice was given; and thereafter from time to time he endeavored to obtain action by the board, but was unable to obtain any information with respect to a hearing of his client's claim. On the 5th day of January, 1911, he wrote a letter to the board requesting that a day be fixed for hearing the claim, but he received no reply thereto.

Under date of May 26, 1911, the board filed with the comptroller an award, by which they awarded the plaintiff $1,500, but no notice of this award was in any manner given to the plaintiff, or to her attorney, and neither she nor her attorney became aware of the fact that the award had been made until the month of December, 1911. The plaintiff's attorney then applied to the secretary of the board to see the exhibits, consisting, among others, of a photograph showing the effect of the change of grade upon her buildings, and the plans for the alterations thereof, which, according to his testimony, were offered in evidence at one of the hearings before the former board of assessors, and he says that photograph was received in evidence; but said exhibits could not be found in the office of the board of assessors. The photograph was subsequently found and produced on the trial by one of the assessors, and it appears to have been marked for identification only; but the original plans were not found. A copy of the plans, however, from the building department, was introduced in evidence on the trial of this action, and they show the alterations necessitated in the plaintiff's buildings by the change of grade. The assessors were not sworn, and no other evidence was offered tending to show what evidence or exhibits they acted upon or had before them when they made the award. The record of the testimony taken on the hearings does not show that both sides rested, or that neither intended to offer further evidence. It is not claimed, however, that plaintiff intended to offer further evidence. The claim

of the plaintiff with respect to a further hearing is that she was desirous of being heard by counsel on the evidence, and particularly by the new board, which did not hear the witnesses testify.

[1] The award made by the board is in writing and signed by the assessors. It recites that a claim was filed by the plaintiff pursuant to the provisions of the statute, and that thereafter, "having duly considered the same, we do, upon the evidence presented and having personally examined the premises and the claim here filed, hereby determine the damage sustained" by the plaintiff by reason of the change of grade to be the sum of $1,500. The evidence taken before the former board of assessors, which presumably is the evidence to which reference is made, showed the plaintiff's damages to be the sum of $11,211.20, and it is uncontroverted, with the exception that a witness called by the city testified that in his opinion the reasonable cost of conforming the buildings to the new grade would be $1,698.50. It appeared, however, that he did not see the premises until some five years after the alterations had been made, and did not know what alterations were actually made, and this is the testimony which plaintiff's counsel moved to have stricken out, and on which motion the board reserved decision. In so far as the record shows, there was no ruling ever made on that motion by the original board or their successors. Since the award is for less damages even than shown by the city's witness, it is fairly to be inferred that it is based upon evidence discovered or disclosed by the view of the premises as stated in the award, whereas they could lawfully view the premises only for the purpose of enabling them to understand and apply the evidence presented by the parties. People ex rel. City of New York v. Stillings, 138 App. Div. 168, 123 N. Y. Supp. 349.

[2, 3] The statute contains no express provision authorizing the successors in office of the members of the board who heard the evidence to make the award; but it was conceded that it was their duty to make it, and doubtless that duty devolved upon them, on the theory that it was a continuing duty to be performed by the board. See People ex rel. Heiser v. Gilon, 121 N. Y. 551, 24 N. E. 944. The terms of this statute gave the plaintiff the right to an award of her damages and to offer evidence and to be heard by counsel. People ex rel. Heiser v. Gilon, supra. See, also, People ex rel. Conway v. Supervisors of Otsego County, 51 N. Y. 401; People ex rel. Conway v. Supervisors, 68 N. Y. 114. It is quite clear, therefore, that the board could not discharge the statutory duty without giving the claimant a hearing and an opportunity to offer evidence; and if no evidence had been taken by their predecessors in office, their award clearly would be a nullity.

[4] It is unnecessary to express an opinion at this time on the question as to whether the board was authorized without consent of the parties to proceed to make an award on the evidence taken before their predecessors, for it is quite clear that they could not do so without giving the plaintiff a further hearing, as their notice indicated they contemplated doing. That proposition is, I think, fairly sustained by Matter of Elder v. Bingham, 118 App. Div. 25, 103 N. Y. Supp. 617,

affirmed 189 N. Y. 509, 81 N. E. 1163, where it was held that the police commissioner could not remove a member of the force on evidence taken before his predecessor.

[5] The board of assessors, in making an award under the statute, acted judicially, and their award was subject to review by certiorari. People ex rel. Heiser v. Gilon, supra; People ex rel. Hallock v. Hennessy, 205 N. Y. 301, 98 N. E. 516; People ex rel. Olin v. Hennessy, 206 N. Y. 33, 99 N. E. 87; Id., 154 App. Div. 109, 138 N. Y. Supp. 659; . Id., 159 App. Div. 814, 144 N. Y. Supp. .879. It would seem from the authorities that, if the plaintiff had discovered that the award had been made before the expiration of four months (see section 2125, Code of Civil Procedure), she would have had a remedy by certiorari to annul the proceedings for want of jurisdiction, as well as on other grounds. People ex rel. Heiser v. Gilon, supra; People ex rel. Janes v. Stillings, 197 N. Y. 548, 90 N. E. 455.

The ground upon which the plaintiff invokes the aid of a court of equity to have the award annulled appears to be that the defects of which she complains are not matters of record and would not appear by the return in a certiorari proceeding. Counsel for appellant claims that the photograph and plans were received in evidence, but not marked in evidence, and that in view of this, and the further fact that the plans have been lost, it is a fair inference that the assessors, in making this award, did not consider those exhibits. He then argues that the assessors who made the award presumably have no knowledge of the proceedings before their predecessors, other than the record, and that they could not be expected to return exhibits as part of the record which the record does not show were received in evidence, and that, in attempting to review the inadequacy of the award by certiorari, his client would be deprived of material evidence. If, as we think, the plaintiff had a right to a hearing before the board, she had an adequate remedy by certiorari, for she would be entitled to have the fact that she was not afforded an opportunity for a hearing before the assessors who made the award appear by their return, and if they made a false return with respect thereto, she would have the usual remedy in such cases. Of course, if she was not entitled to a further hearing, and the assessors were authorized to make the award, and they based it on the record before their predecessors, and in so doing did not consider the exhibits which plaintiff claims were offered and received in evidence, then a review by certiorari would necessarily be confined to the record as made. It is upon this theory that plaintiff seeks the aid of a court of equity to have the award annulled, on the ground that all of the evidence was not before the assessors or considered by them, and her counsel cited many authorities tending to sustain the jurisdiction of a court of equity to annul judgments and determinations of inferior courts based upon mistake, where there is no other adequate remedy. · See Robb v. Vos, 155 U. S. 33, 15 Sup. Ct. 4, 39 L. Ed. 52; Ewing v. City of St. Louis, 72 U. S. (5 Wall.) 413, 18 L. Ed. 657; Metcalf v. Williams, 104 U. S. 93, 26 L. Ed. 665; Smith v. McIver, 18 U. S. (9 Wheat.) 532, 6 L. Ed. 152; Youngs v. Carter, 10 Hun, 194; 1 Story, Eq. Jur. (10th Ed.) §§ 78, 140; 2 Story, Eq. Jur. (10th Ed.) § 1574.

[6] I am of opinion that plaintiff is not entitled to have the award set aside by a court of equity on the theory that the exhibits to which reference has been made were *received* in evidence, but that the record failed to show that fact, and therefore they were not considered in making the award. If the record was erroneous in that regard, plaintiff should have had it corrected by those who made it. Moreover, her evidence is insufficient to impeach the record in this regard.

[7] If, however, plaintiff was entitled to a hearing, and the assessors were without jurisdiction to take up the record made by their predecessors and make the award, without affording her an opportunity to be heard by counsel on the evidence and to present further evidence if she desired, it was unnecessary for her to resort to equity, for she had an adequate remedy either by certiorari or by mandamus.

[8] If she was entitled to a hearing, she would undoubtedly be excused from resorting to certiorari to claim that right, by reason of the fact that she had a right to rely upon the promise of the assessors to give her a further hearing, and she was not called upon to watch the records in the comptroller's office from day to day to discover whether they were proceeding in disregard of their promise to give her a hearing and of her right thereto. Having thus by lapse of time lost the right to review the proceeding by certiorari, I think she was at liberty, on the jurisdictional ground that she was entitled to a hearing, to disregard the award, precisely the same as if she did not know it had been made, or as if it had not been made, and to invoke the aid of the court by mandamus to compel the board to fix a time and place for a hearing on her claim. If she had a right to such a hearing before this board, then no action taken by it without an opportunity for such hearing can be binding upon or affect her; and the board could not, I think, by proceeding to consider the evidence, make their proceedings of such a judicial nature that she would be bound at her peril to institute certiorari to review them within the time allowed for that remedy. It is now well settled that, where an official or employé in the public service is removed without an opportunity to be heard or to make an explanation, he has a remedy by mandamus, and is not obliged to resort to certiorari to review a record which is not binding upon him. Matter of Elder v. Bingham, supra; People ex rel. Segee v. Hayes, 106 App. Div. 563, 94 N. Y. Supp. 754; People ex rel. Fleming v. Dalton, 158 N. Y. 175, 52 N. E. 1113; People ex rel. Collins v. Ahearn, 193 N. Y. 441, 86 N. E. 474. See, also, People ex rel. Nostrand v. Wilson, 119 N. Y. 515, 23 N. E. 1064; People ex rel. Quinn v. Voorhis, 115 App. Div. 218, 100 N. Y. Supp. 927, affirmed 187 N. Y. 327, 80 N. E. 196. So, too, where a board of supervisors rejects a claim which it was its duty to audit, the claimant has a remedy by mandamus. People ex rel. Conway v. Supervisors of Otsego County, supra; People ex rel. Conway v. Supervisors, supra.

One of the grounds upon which the remedy by mandamus is awarded is that there is no other adequate remedy, and while the courts are reluctant to award the writ after the lapse of the time within which a review by certiorari must be invoked, that is not a hard and fast rule, and is not adhered to where the delay is satisfactorily explained. It

would seem, therefore, that the plaintiff still has an adequate remedy, if she was entitled to a hearing by the board which made the award and it has not been accorded to her. Of course, we cannot decide in this action that the plaintiff now has or is entitled to a remedy by mandamus; and what we have said on that subject is only by way of suggesting a possible remedy for what appears to be an inadequate award; and since the points have not been fully argued, our suggestions are not to be taken as the final expression of our views on the subject. What we decide in this suit for equitable relief is that plaintiff has failed to establish a case for relief within the principles of equity jurisprudence under which a court of equity will annul a determination of an inferior tribunal.

It follows, therefore, that the judgment should be affirmed, but, since the equities appear to be with the plaintiff, without costs. All concur.